
## Service of Process Transmittal Summary

**TO:**     Julie Barry
CORTEVA AGRISCIENCE
PO BOX 30649, 974 CENTRE RD
WILMINGTON, DE 19805-7649

**RE:**     **Process Served in Delaware**

**FOR:**    E. I. du Pont de Nemours and Company  (Former Name)  (Domestic State: DE)
EIDP, Inc (True Name)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | AQUA NORTH CAROLINA, INC. vs. DOWDUPONT, INC. |
| **CASE #:** | 22CV004345 |
| **PROCESS SERVED ON:** | The Corporation Trust Company, Wilmington, DE |
| **DATE/METHOD OF SERVICE:** | By Process Server on 01/04/2023 at 11:40 |
| **JURISDICTION SERVED:** | Delaware |
| **ACTION ITEMS:** | CT will retain the current log |
| | Image SOP |
| | Email Notification,  Mary Dougherty  mary.dougherty@corteva.com |
| | Email Notification,  Tom Warnock  thomas.a.warnock@corteva.com |
| | Email Notification,  Dottie Perillo  dorothy.f.perillo@corteva.com |
| | Email Notification,  Catharine Gillespie  catharine.e.gillespie@corteva.com |
| | Email Notification,  Joe Alberts  joseph.alberts@corteva.com |
| | Email Notification,  Julie Barry  juliann.a.barry@corteva.com |
| | Email Notification,  Angie Stanke  angie.stanke@corteva.com |
| **REGISTERED AGENT CONTACT:** | The Corporation Trust Company |
| | 1209 Orange Street |
| | Wilmington, DE 19801 |
| | 877-564-7529 |
| | MajorAccountTeam2@wolterskluwer.com |

The information contained in this Transmittal is provided by CT for quick reference only. It does not constitute a legal opinion, and should not otherwise be relied on, as to the nature of action, the amount of damages, the answer date, or any other information contained in the included documents. The recipient(s) of this form is responsible for reviewing and interpreting the included documents and taking appropriate action, including consulting with its legal and other advisors as necessary. CT disclaims all liability for the information contained in this form, including for any omissions or inaccuracies that may be contained therein.


**Wolters Kluwer**

# PROCESS SERVER DELIVERY DETAILS

**Date:**                                     Wed, Jan 4, 2023
**Server Name:**                              Kevin Dunn

| Entity Served | E. I. DU PONT DE NEMOURS AND COMPANY |
|---|---|
| Case Number | 22CV004345 |
| Jurisdiction | DE |

| Inserts | | |
|---|---|---|
|  |  |  |



# STATE OF NORTH CAROLINA

__NEW HANOVER__ County

File No.

In The General Court Of Justice
☐ District  ☒ Superior Court Division

| Name Of Plaintiff | |
|---|---|
| AQUA NORTH CAROLINA, INC. | **CIVIL SUMMONS** |
| Address | ☐ **ALIAS AND PLURIES SUMMONS (ASSESS FEE)** |
| 202 MacKenan Court | |
| City, State, Zip | |
| Cary, NC, 27511 | G.S. 1A-1, Rules 3 and 4 |

**VERSUS**

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| DowDuPont, Inc.; E. I. du Pont Nemours and Company; The Chemours Company; and The Chemours Company FC, LLC. | 12/28/2022 |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| DowDuPont, Inc.<br>974 Centre Rd.<br>Wilmington, DE, 19805 | E. I. du Pont Nemours and Company<br>974 Centre Rd.<br>Wilmington, DE, 19805 |

⚠ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!

Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and

2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| Nevin Wisnoski, Esq.<br>Principle Office:<br>360 Lexington Ave, 11th Floor<br>New York, NY, 10017 | 12-28-22 | 2:59 ☐ AM ☒ PM |
| | Signature | |
| | ☒ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ ENDORSEMENT (ASSESS FEE)<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time |
|---|---|---|
| | | ☐ AM  ☐ PM |
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have *MANDATORY ARBITRATION* programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

(Over)

| | **RETURN OF SERVICE** | |
|---|---|---|

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| *Date Served* | *Time Served* | ☐ AM ☐ PM | *Name Of Defendant* |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| *Date Served* | *Time Served* | ☐ AM ☐ PM | *Name Of Defendant* |
|---|---|---|---|

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| *Service Fee Paid* $ | *Signature Of Deputy Sheriff Making Return* |
|---|---|
| *Date Received* | *Name Of Sheriff (type or print)* |
| *Date Of Return* | *County Of Sheriff* |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

22 cv 004345

STATE OF NORTH CAROLINA
COUNTY OF NEW HANOVER

IN THE GENERAL COURT OF JUSTICE
SUPERIOR COURT DIVISION

2022 DEC 28 P 2: 59

NEW HANOVER COUNTY C.S.C.

No.: _____

AQUA NORTH CAROLINA, INC.,

      Plaintiff,

v.

DOWDUPONT, INC., E. I. DU PONT DE
NEMOURS AND COMPANY, THE
CHEMOURS COMPANY, and THE
CHEMOURS COMPANY FC, LLC,

      Defendants.

)
)
)
)
)
)
)
)
)
)
)
)
)

**COMPLAINT**

<u>JURY TRIAL REQUESTED</u>

**A TRUE COPY**
CLERK OF SUPERIOR COURT
NEW HANOVER COUNTY
By: _____

<u>**NATURE OF THE ACTION**</u>

1.     Plaintiff brings this action for damages and other relief as described herein caused by DowDuPont, Inc., E. I. du Pont de Nemours and Company, The Chemours Company, and The Chemours Company FC, LLC (collectively, "Defendants") discharges of polyfluorinated chemicals into the Cape Fear River (the "River"), the groundwater of North Carolina, and the airshed of multiple North Carolina counties to the detriment of Plaintiff as a water provider to North Carolinians in the region Plaintiff serves.

2.     Plaintiff Aqua North Carolina, Inc. ("Plaintiff") serves over 320,000 North Carolina residents across the state—including those in New Hanover and other impacted counties—as a water utility provider and has suffered substantial damages to its water sources, infrastructure and facilities proximately caused by Defendants' discharges into the environment.

3.     Defendants have operated the Fayetteville Works Facility ("FWF", the "Site" or "Plant"), which has discharged wastewater and other effluents containing polyfluorinated

Page 1 of **22**

chemicals such as the ammonium salt of hexafluoropropylene oxide dimer acid ("GenX") (with such polyfluorinated chemicals collectively referred to as "PFCs") into the River, groundwater supplying Plaintiff's public water systems and the airshed of multiple North Carolina counties.

4. Defendants have willfully and wantonly, recklessly, and negligently discharged potentially cancer-causing chemicals into the River, groundwater, and airshed, all of which have and continue to contaminate the primary source of drinking water for thousands of North Carolina residents.

5. Knowing that their conduct was illegal and harmful to human health and the environment, Defendants misled and lied to government regulators, claiming that they were disposing of PFCs at a secure, off-site facility or properly incinerating them.

6. Because neither the state nor Plaintiff as a local water provider knew that Defendants were discharging GenX and other PFCs from the plant into the River, groundwater, and airshed —and ultimately into local water supplies, contaminating them — they were prevented and could not timely determine, design and put into effect appropriate measures to, among other precautions and remedial measures, treat public water supplies for the PFC contamination Defendants had caused.

7. Through this action, Plaintiff seeks to recover from Defendants past and future compensatory damages relating to the investigation, remediation, removal, disposal, and monitoring of the PFC contamination of its water systems in the State of North Carolina, as well as any and all punitive damages available as a result of the actions and/or inactions of Defendants.

## JURISDICTION AND VENUE

8.     The Defendants are subject to jurisdiction in North Carolina under N.C. Gen. Stat. §§ 1-75.4(1)(d) and (4) because they engaged in substantial activity in North Carolina and caused injury to Plaintiff's property due to the use of products they manufactured in North Carolina.

9.     This Court also has personal jurisdiction over Defendants because each has purposefully availed itself of the benefits and protections of the laws of the State of North Carolina. Each of the Defendants conducted business and committed torts in North Carolina, by itself or through an agent or alter ego, which caused Plaintiff to suffer severe damages within the boundaries of the state—particularly within New Hanover County.

10.    This Court is a proper venue for this action, including but not limited to because Plaintiff owns and operates water systems in New Hanover County that have been contaminated with PFCs, such that the causes of action asserted herein, or some part thereof, arose in New Hanover County. See N.C.G.S. §§ 1-76, 1-77, 1-80.

## PARTIES

11.    **Plaintiff Aqua North Carolina, Inc. ("Plaintiff")** is a corporation organized and existing under the laws of North Carolina, with its principal place of business located at 202 MacKenan Court, Cary, North Carolina 27511. Plaintiff is a subsidiary of Essential Utilities Inc., one of the largest publicly traded water, wastewater, and natural gas providers in the United States.

Page 3 of 22

12.     Plaintiff owns and operates 737 public water systems in North Carolina. Plaintiff's water systems serve approximately 320,000 customers located in more than 51 counties, including New Hanover, throughout the State.[1]

13.     Plaintiff relies on a combination of groundwater wells and surface water purchased from third-party sources to supply the water its systems provide to customers in North Carolina. Plaintiff's water systems include over 1,500 active production wells and approximately 85,000 water connections. Some but not all of Plaintiff's water systems have been contaminated because of discharges of Defendants' GenX and other PFCs in North Carolina.

14.     **Defendant DowDuPont, Inc. ("DowDuPont")** is a Delaware corporation with two principal places of business, including in Midland, Michigan and Wilmington, Delaware.

15.     **Defendant E. I. du Pont de Nemours and Company ("DuPont")** is or was a Delaware corporation with its principal place of business in Wilmington, Delaware. DuPont owned and operated the FWF from the early 1970s until 2015, when ownership was shifted to a DuPont spin-off company—Defendant The Chemours Company. As of August 31, 2017, a $130 billion merger between Dow Chemical and DuPont was completed. Plaintiff is unaware of what, if anything, remains of DuPont outside of the merger with Dow Chemical.

16.     **Defendant The Chemours Company ("Chemours Co.")** is a limited liability company organized under the laws of the State of Delaware, with its principal place of business located at 1007 Market Street, P.O. Box 2047, Wilmington, Delaware, 19899.

---

[1] https://www.aquaamerica.com/our-states/north-carolina.aspx

17. In 2015, DuPont spun off its performance chemicals business to Chemours Co., along with vast environmental liabilities which Chemours Co. assumed, including those related to the FWF and Gen-X.

18. On information and belief, Chemours Co. was incorporated as a subsidiary of DuPont as of April 30, 2015. From that time until July 2015, Chemours Co. was a wholly-owned subsidiary of DuPont.

19. In July 2015, DuPont spun off Chemours Co. and transferred to Chemours Co. its "performance chemicals" business line, which includes its fluoroproducts business, distributing shares of Chemours Co. stock to DuPont stockholders, and Chemours Co. has since been an independent, publicly-traded company.

20. On information and belief, Chemours Co. is currently one of the entities responsible for operating the FWF, located at 22828 NC Highway 87 W., Fayetteville, North Carolina.

21. **Defendant Chemours Company FC, LLC ("Chemours FC")** is a Delaware limited liability corporation with its principal place of business in Wilmington, Delaware, and is registered to do business as a foreign corporation in the State of North Carolina.

22. Chemours FC is a subsidiary of Chemours Co., and the two entities are referred to in this complaint collectively as the "Chemours Defendants."

23. On information and belief, Chemours FC is currently one of the entities responsible for operating the FWF, located at 22828 NC Highway 87 W., Fayetteville, North Carolina.

Page 5 of 22

## GENERAL FACTUAL ALLEGATIONS

24.     Defendants have a history of causing chemical damages and incurring liabilities arising from per- and polyfluoroalkyl substances (PFAS), such as the bio-persistent, bio-accumulative, chemical Perfluorooctanoic acid ("PFOA" also known as "C8"). PFOA is one of the PFCs that was discharged and emitted from the FWF. When the 3M Company, a major supplier of PFOA in the United States generally, and specifically to DuPont, came under increasing scrutiny from the U.S. Environmental Protection Agency (the "EPA") and decided to stop making PFOS— its own long-chain PFAS used in a variety products from Scotchgard to firefighting foams— DuPont quietly increased its own production of PFOA at the Fayetteville Works facility located on the Cape Fear river in North Carolina, assuring regulators and the public at the time that all PFOA-containing wastewater would be contained and disposed of elsewhere and that PFOA presented no threat to human health or the environment.

25.     In 2006, the EPA invited DuPont and several other leading manufacturers of PFAS and PFAS-containing products to join a global stewardship program that sought to eliminate PFOA from emissions and products by 2015. As part of its efforts to meet that commitment, DuPont developed GenX as a substitute for PFOA in its role as a processing aid for manufacturing fluoropolymers. In the ensuing years, Defendants increased markedly their production of GenX, including at the FWF, claiming it was "a more sustainable solution" that had "a favorable toxicological profile and very rapid bioelimination, combined with unique

environmental exposure control technologies that reduce the potential for environmental release and exposure."[2]

26.     As manufacturers of PFCs, the Defendants knew or should have known that chemicals like GenX and PFOA presented an unreasonable risk to human health and the environment. Nonetheless, Defendants acted with the full knowledge that PFCs would be introduced into the environment and ultimately contaminate the groundwater sources that serve as the supply sources for Plaintiff's water systems in the State of North Carolina.

27.     The FWF produces a variety of films, fibers, and specialty chemicals, the wastewater from each flows through one or more on-site wastewater treatment plants owned and operated by Defendants, where the contaminated wastewater is diluted with hundreds of thousands of gallons of river water before it is ultimately discharged into the River. This dilution makes the chemicals harder to detect but does not ultimately reduce the total amount of contaminants flowing into the River. Disposal of the waste treatment residuals generated an additional potential source of groundwater contamination if not properly disposed of.

28.     On information and belief, the Site also has or had had at least one exhaust stack that has operated over the years as a source for airborne emissions of PFCs, thereby giving rise to additional water contamination when airborne particles emitted from the stack are deposited and dissolve and/or leach into groundwater.[3]

---

[2] *See* DuPont, *DuPont GenX Processing Aid for Making Fluoropolymer Resins*, July 7, 2010, *available at* https://bladenonline.com/wp-content/uploads/2017/06/Chemours_GenX_Brochure_Final_07July2010.pdf.

[3] *See also* Zhou et al, *Legacy, and emerging airborne per- and polyfluoroalkyl substances (PFAS) collected on PM2.5 filters in close proximity to a fluoropolymer manufacturing facility,* Envt'l Science:

29.     Scientists have linked PFCs to kidney cancer, testicular cancer, prostate cancer, ovarian cancer, non-Hodgkin lymphoma, liver disease, ulcerative colitis, thyroid disease, hypercholesterolemia, and pregnancy-induced hypertension, among other illnesses.

30.     As the dangers about PFCs and DuPont's conduct connected therewith began to be revealed, injury and property damage claims and litigation against DuPont (and the Chemours Defendants' other predecessors) started to mount and created tremendous ongoing liability risks for the company. In an effort to reduce its liability exposure to PFC liabilities, DuPont spun off its chemicals division and PFC-related liabilities in July 2015, creating a new publicly-traded company, Defendant Chemours Co., which was once wholly owned by DuPont.

31.     In May 2016, Fortune magazine wrote, "When industrial giant DuPont spun off its performance chemicals division in July 2015, few gave the orphaned appendage much hope. Loaded up with debt and stuffed full of potentially toxic assets—on multiple levels—the new company, re-branded as Chemours, was seen by many investors as a listing garbage scow locked on a one-way course to the bottom of the ocean. So while Chemours products made up around a fifth of DuPont's overall sales when it was spun off, it ended up inheriting nearly two-thirds of its environmental liabilities. Pending lawsuits linked to a chemical used in making Teflon, one of Chemours' biggest products, now sits on its balance sheet like a ticking time bomb, threatening to wipe out millions of dollars from the company's coffers over the next few years."[4]

_____

Processes & Impacts, 24:2272–2283 (2022), *available at* https://pubs.rsc.org/en/content/articlelanding/2022/em/d2em00358a/unauth.

[4] http://fortune.com/2016/05/18/how-dupont-spinoff-chemours-came-back-from-the-brink/

32.    As a result of the 2015 Chemours spin-off, the Chemours Defendants became the owners and operators of the FWF, leasing space to two other chemical manufacturers, Defendant DowDuPont and non-party Kuraray America, Inc.

33.    Plaintiff is committed to supplying potable drinking water to its North Carolina customers consistent with federal, state, and local guidelines and requirements. Thus, Plaintiff must implement remedial measures, where necessary, to ensure that the water it supplies to its customers meets those standards and, in view of Defendants' activities and operations at the FWF, take measures to protect its water sources and water system infrastructure, the impact upon which is now only recently known to plaintiff.

34.    As a proximate result of Defendants' activities and conduct, Plaintiff has been forced to address the contamination of its water systems with PFCs to in order to protect its customers' health and well-being and its infrastructure involved in operating a public water system. In doing so, Plaintiff has already expended and will continue to expend significant resources to sample, test, investigate, and monitor its water systems for PFC contamination.

35.    Plaintiff has also incurred, and will continue to incur, significant costs to monitor its water systems for the presence of PFCs—or reasonable evidence exists of impending contamination with PFCs—design and make capital improvements to its water systems, such as the installation of filtration processes to reduce and/or remove PFC contamination. It has or may be forced to take or make other actions or adjustments that include taking certain wells out of service or purchasing water to mitigate the impact of PFCs on Plaintiff's existing water supplies. Operation and maintenance measures for these improvements and adjustments are ongoing and will only add

to the costs Plaintiff have already and will continue to incur to address the PFC contamination or the substantially increased risk of contamination caused by Defendants.

**COUNT I:**
**INADEQUATE DESIGN/FORMULATION**
**N.C.G.S. § 99B-6**

36.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

37.     As manufacturers of PFCs, including but not limited to GenX, Defendants owed a duty to all persons whom its products—or manufacturing of its products—might foreseeably harm, including Plaintiff, to act with due care and reasonably in connection with the design and formulation of the relevant products. Defendants, however, breached their duties to ensure effective and adequate design and formulation, which renders Defendants herein jointly and severally liable to Plaintiff in tort for the resulting proximate harms and injuries.

38.     In accordance with N.C.G.S. § 99B-6, at the time of the relevant products' design and manufacture, the manufacturer Defendants acted unreasonably in designing or formulating the product, and this conduct was a proximate cause of the harm for which damages are sought. Alternatively, at the time the product left the control of the manufacturer and was let loose into the environment, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume it.

39.     Defendants' conduct with regarding to engaging in the design and manufacturing or products with PFCs was negligent and resulted in the use of defective designs and formulations that posed great danger and harm to human health and the environment.

Page **10** of **22**

40.     At all times, Defendants could make products that did not contain PFCs. Thus, reasonable alternative designs existed which could prevent Plaintiff's injuries.

41.     The risks posed to health and the environment by Defendants' design and manufacturing practices for PFCs far outweigh the products' utility in end user products.

42.     The dangers inherent in the product design and formulation were not open and obvious to foreseeable users and were such as could have been materially reduced or eliminated had the Defendants acted with due care in designing, formulating, and manufacturing the products.

43.     Defendants knew that it was substantially certain that their acts and omissions described above would contaminate the River, groundwater and the airshed of multiple North Carolina counties Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's property rights.

### COUNT II:
### GROSS NEGLIGENCE

44.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

45.     As manufacturers of PFCs, including GenX, Defendants owed a duty to Plaintiff and to all persons whom its products might foreseeably harm and to exercise due care in the formulation, manufacture, labeling, warning, storage, handling, and disposal of PFCs at the FWF.

46.     Defendants owed a duty to Plaintiff to act reasonably and not release inherently dangerous PFCs like GenX into the air, soil, and water was imminent and certain.

Page **11** of **22**

47.     Defendants knew or should have known that PFCs are highly soluble in water, highly mobile, extremely persistent in the environment, and highly likely to contaminate water supplies if released into the environment.

48.     Defendants knew or should have known that the way they were designing, manufacturing, and disposing of the PFCS would result in injury and damage, including contamination of groundwater and drinking and potable water supply wells.

49.     As manufacturers, Defendants were in the best position to provide safe and suitable products and to take steps to prevent any harm or eliminate, correct, or remedy any contamination they caused.

50.     Defendants knew that it was substantially certain that their acts and omissions described above would inevitably contaminate the Plaintiff's water systems in North Carolina.

51.     As a direct result of Defendants' acts and omissions and the resulting contamination, Plaintiff has incurred and will incur in the future significant expenses and costs described above.

52.     Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for Plaintiff's property rights.

## COUNT III:
## NEGLIGENCE

53.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

54.     Defendants' breach of their duty to exercise reasonable care proximately caused damage to Plaintiff's property. More specifically, as explained above, Defendants' conduct caused PFCs to discharge, emit, travel, and flow onto, into and otherwise infiltrate Plaintiff's land, wells and other water sources, mains, laterals, tanks, pipes, fixtures, and appliances. Plaintiff's real and personal property is, therefore, less valuable—and Plaintiff has spent, and in the future will need to spend, substantial amounts of money on monitoring, remediation, including cleaning and replacing pipes, fixtures, and other capital improvements (together with related acquisition, operational costs and maintenance expenses) to its infrastructure.

## COUNT IV:
## PRIVATE NUISANCE

55.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

56.     Plaintiff is the owner of land, easements, and water rights that permit it to extract surface and groundwater for use in its wells to provide water to its customers in North Carolina.

57.     Defendants' intentional, negligent, and/or reckless conduct, as alleged herein, has resulted in the contamination of Plaintiff's water systems in North Carolina with PFCs, human carcinogens that cause adverse human health effects.

58.     The contamination caused, contributed to, and/or maintained by Defendants substantially and unreasonably interfered and continues to interfere with Plaintiff's use and enjoyment of its property.

Page **13** of **22**

59. Each Defendant has caused, contributed to, and/or maintained such nuisance, and is a substantial contributor to such nuisance.

60. As a direct and proximate result of Defendants' acts and omissions as alleged herein, Plaintiff has suffered, are suffering and will continue to suffer substantial damages related to PFC contamination of the impacted public systems and infrastructure, including but not limited to devaluation, capital costs, legal costs, and sampling costs.

61. Defendants knew it was substantially certain that their acts and omissions described above would cause injury and damage, including PFC contamination of Plaintiff's groundwater supplies. Defendants committed each of the above-described acts and omissions knowingly, willfully, and with oppression, fraud, and/or malice.

62. Defendants are jointly and severally liable for all such damages as arose out of their unlawful contribution toward causing a private nuisance, and Plaintiffs are entitled to recover all such damages and other relief as set forth below.

## COUNT V:
## PUBLIC NUISANCE

63. Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

64. Defendants' conduct and activities set forth above have created a continuing and unabated public nuisance that caused and will cause in the future significant and substantial damages, harm, and risk of harm to human health, the environment, and the public water systems Plaintiffs operate. This nuisance has greatly inconvenienced the communities Defendants' PFCs

have polluted their water sources or have placed them in imminent danger of becoming polluted with these chemicals.

65.     Plaintiff is authorized by the North Carolina Utilities Commission to operate public water systems for the public's convenience and well-being in specific service areas of North Carolina that have been adversely affected by Defendants' PFC discharges or emissions as alleged above. Plaintiff's authority under the rights bestowed by the Utilities Commission creates protected interests in Plaintiff that cannot be considered to be merged with the general public's rights.

66.     Defendants' activities and conduct as alleged above have proximately caused Plaintiff to sustain special and unique damages from those sustained by the general public for which it is entitled to compensation and remedy.

## COUNT VI:
## TRESPASS TO CHATTELS AND REAL PROPERTY

67.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

68.     Plaintiff is the owner, operator, and actual possessor of real property and improvements used for collecting drinking water throughout North Carolina.

69.     Defendants manufactured PFCs like GenX with the actual knowledge and/or substantial certainty that they would their discharge in the air and water and would migrate into groundwater, causing contamination.

Page **15** of **22**

70.     Defendants negligently, recklessly, and/or intentionally designed and manufactured PFCs in a manner that caused the PFCs to contaminate and trespass upon Plaintiff's property.

71.     Defendants knew that it was substantially certain that their acts and omissions described above would threaten public health and cause extensive contamination of property, including groundwater collected for drinking. Defendants committed each of the above-described acts and omissions knowingly, willfully, and/or with fraud, oppression, or malice, and with conscious and/or reckless disregard for the health and safety of others, and for Plaintiff's property rights.

72.     As a direct and proximate result of Defendants' trespass, Plaintiff has incurred significant expenses and costs described above.

## COUNT VII:
## ACTUAL FRAUDULENT TRANSFER (DuPont and Chemours Co.)

73.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

74.     Through their effectuation of the Spinoff, Chemours Co. and DuPont (the "Fraudulent Transfer Defendants") caused Chemours Co. to transfer valuable assets to DuPont, including but not limited to the $3.9 billion dividend (the "Transfers"), while simultaneously assuming significant liabilities (the "Assumed Liabilities").

75.     The Transfers and Assumed Liabilities were made for the benefit of DuPont.

76.     At the time that the Transfers were made and the Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

77.     The Fraudulent Transfer Defendants made the Transfers and incurred the Assumed Liabilities with the actual intent to hinder, delay, and defraud the creditors or future creditors of Chemours Co.

78.     Plaintiff has been harmed as a result of the conduct of the Fraudulent Transfer Defendants.

79.     Plaintiff is entitled to avoid the Transfers and to recover property or value transferred to DuPont.

### COUNT VIII:
### CONSTRUCTIVE FRAUDULENT TRANSFER (DuPont and Chemours Co.)

80.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

81.     Chemours Co. did not receive reasonably equivalent value from DuPont in exchange for the Transfers and Assumed Liabilities.

82.     Each of the Transfers and the assumption of the Assumed Liabilities by Chemours Co. was made to or for the benefit of DuPont.

83.     At the time that the Transfers were made and the Assumed Liabilities were assumed, and until the Spinoff was complete, DuPont was in a position to, and in fact did, control and dominate Chemours Co.

84. The Fraudulent Transfer Defendants made the Transfers and assumed the Assumed Liabilities when Chemours Co. was engaged or about to be engaged in a business for which its remaining assets were unreasonably small in relation to its business.

85. Chemours Co. was insolvent or in contemplation of insolvency at the time of the Transfers or became insolvent because of the Transfers and its assumption of the Assumed Liabilities.

86. At the time that the Transfers were made and Chemours Co. assumed the Assumed Liabilities, the Fraudulent Transfer Defendants intended to incur, or believed or reasonably should have believed, that Chemours Co. would incur debts beyond its ability to pay as they became due.

87. Plaintiff has been harmed because of the Transfers.

88. Plaintiff is entitled to avoid the Transfers and to recover property or value transferred to DuPont.

## COUNT IX:
## PUNITIVE DAMAGES

89. Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

90. Defendants engaged in willful, wanton, malicious, and or/reckless conduct that caused the foregoing damage upon Plaintiff, disregarding their protected rights, giving rise to one or more aggravating factors warranting punitive damages under N.C. Gen. Stat. § 1D-1 *et seq.*

91. Defendants' willful, wanton, malicious, and/or reckless conduct includes but is not limited to Defendants' failure to take all reasonable measures to ensure PFCs would not be

released into the environment and inevitably result in the contamination of Plaintiff's water systems in North Carolina.

92.     Under the circumstances, Defendants engaged in fraudulent or willful and wanton conduct within the meaning of N.C. Gen. Stat. § 1D-5(4) & (7) and N.C. Gen. Stat. § 15; and engaged in acts and omissions giving rise to one or more aggravating factors within the meaning of N.C. Gen. Stat. § 1D-15 and N.C. Gen. Stat. § 1D-35.

93.     On information and belief, Defendants' relevant officers, directors, or managers participated in or condoned the conduct constituting the aggravating factor justifying punitive damages, within the meaning of N.C. Gen. Stat. § 1D-15(c).

94.     Defendants have caused great harm to Plaintiff, acting with implied malice and an outrageously conscious disregard for Plaintiff's rights and safety, such that the imposition of punitive damages is warranted.

## COUNT X:
## UNJUST ENRICHMENT

95.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

96.     Defendants failed to incur expenditures to limit or prevent the release of GenX and other PFCs into the environment and prevent the contamination of Plaintiff's readily accessible water supplies, failed to incur the costs to timely investigate the impacts on Plaintiff and their property, failed to incur the costs to timely mitigate the impacts on Plaintiff and their property, and failed to incur costs to remediate the contaminated soil, dust and groundwater at Fayetteville Works. Defendants have been unjustly enriched by these and other failures to make

expenditures to prevent the person and property of Plaintiff from being contaminated with GenX and other PFCs.

**COUNT X1**
**UNFAIR AND DECEPTIVE TRADE PRACTICES**
**N.C.G.S. § 75-1.1 *et seq.***

97.     Plaintiff incorporates by reference each and every allegation set forth in all preceding paragraphs as if fully restated herein.

98.     Defendants' actions or omissions alleged herein constitute unfair or deceptive acts or practices in or affecting commerce.

99.     Plaintiff is an injured "person" pursuant to § 75-16 because the business has been damaged due to Defendants' unfair or deceptive trade practices.

100.    Defendants' recurrent violations of environmental regulations and otherwise actions to poison the River offend public policy and are immoral, unethical, oppressive, unscrupulous, and substantially injurious to Plaintiff.

101.    On information and belief, Defendants' relevant officers, directors, or managers participated in or condoned the conduct constituting the unfair, unethical, immoral, and/or substantially injurious damages to Plaintiff.

102.    Defendants have caused great harm to Plaintiff, acting with implied malice and an outrageously conscious disregard for Plaintiff's rights and safety, such that the imposition of trebled or punitive damages—whichever is greater—is warranted.

Page **20** of **22**

## PRAYER FOR RELIEF

**PLAINTIFF REQUESTS THE FOLLOWING RELIEF FROM THE COURT:**

a. An order for an award of compensatory damages;

b. An order for an award of punitive or trebled damages, whichever is greater;

c. An order for equitable relief;

d. An order for pre-judgment and post-judgment interest;

e. A Jury trial for all issues so triable;

f. An order for an award of reasonable attorneys' fees and litigation expenses; and

g. An order for all such other relief the Court deems just.

Respectfully submitted by Plaintiffs' undersigned counsel.

Date: December 28, 2022

NAPOLI SHKOLNIK

*/s/ Nevin Wisnoski*
Nevin Wisnoski, Esq.
NC Bar No.: 55038
360 Lexington Avenue, 11th Floor
New York, NY 10017
Tel: (212) 397-1000
Fax: (888) 870-2757
nwisnoski@napolilaw.com

Paul J. Napoli, Esq.
(*Special Appearance to be filed*)
270 Muñoz Rivera Avenue,
Hato Rey, Puerto Rico 00918
Tel: (833) 271-4502
Fax: (646) 843-7603
pnapoli@nsprlaw.com

Andrew W. Croner, Esq.
(*Special Appearance to be filed*)
360 Lexington Ave., 11th Floor
New York, NY, 10017
Tel: (212) 397-1000
Fax: (646) 843-7603
acroner@napolilaw.com

**Cohen Placitella & Roth, P.C.**

Christopher M. Placitella, Esq.
(*Special Appearance to be filed*)
127 Maple Avenue
Red Bank, NJ 07701
Tel: (732) 747-9003
Fax: (732) 747-9004


Robert Pratter , Esq.
(*Special Appearance to be filed*)
Michael Coren, Esq.
(*Special Appearance to be filed*)
Eric S. Pasternack, Esq,
(*Special Appearance to be filed*)
2001 Market Street
Philadelphia, PA 19103
Tel: (215) 567-3500
Fax: (215) 567.6019

*Attorneys for Plaintiff*

# STATE OF NORTH CAROLINA

NEW HANOVER | County

File No.

In The General Court Of Justice
☐ District ☒ Superior Court Division

*Name And Address Of Plaintiff 1*
AQUA NORTH CAROLINA, INC.

202 MacKenan Court, Cary, NC 27511

2022 DEC 28 P 3: 02

NEW HANOVER COUNTY, C.S.C.

BY_____

**GENERAL CIVIL ACTION COVER SHEET**

☒ INITIAL FILING ☐ SUBSEQUENT FILING

*Name And Address Of Plaintiff 2*

Rule 5(b) of the General Rules of Practice for the Superior and District Courts

|  |
|---|
| **VERSUS** |

*Name And Address Of Defendant 1*
DOWDUPONT, INC
974 Centre Rd.
Wilmington DE, 19805

*Name And Address Of Attorney Or Party, If Not Represented
(complete for initial appearance or change of address)*
Nevin Wisnoski, Esq.
Principle Office:
360 Lexington Ave, 11th Floor
New York, NY 10017

*Summons Submitted*
☐ Yes ☐ No

*Telephone No.*
(919) 374-1971

*Cellular Telephone No.*

*NC Attorney Bar No.*
55038

*Attorney Email Address*
NWisnoski@NapoliLaw.com

*Name And Address Of Defendant 2*
E. I. DU PONT ED MENOURS AND COMPANY
974 Centre Rd.
Wilmington DE, 19805

☒ Initial Appearance in Case ☐ Change of Address

*Name Of Firm*
Napoli Shkolnik

*Fax No.*

*Summons Submitted*
☐ Yes ☐ No

*Counsel For*
☒ All Plaintiffs ☐ All Defendants ☐ Only: *(list party(ies) represented)*

☒ Jury Demanded In Pleading ☐ Complex Litigation ☐ Stipulate to Arbitration

|  |
|---|
| **TYPE OF PLEADING** |

*(check all that apply)*

☐ Amend (AMND)
☐ Amended Answer/Reply (AMND-Response)
☐ Amended Complaint (AMND)
☐ Assess Costs (COST)
☐ Answer/Reply (ANSW-Response) *(see Note)*
☐ Change Venue (CHVN)
☒ Complaint (COMP)
☐ Confession Of Judgment (CNFJ)
☐ Consent Order (CONS)
☐ Consolidate (CNSL)
☐ Contempt (CNTP)
☐ Continue (CNTN)
☐ Compel (CMPL)
☐ Counterclaim (CTCL) Assess Court Costs
☐ Crossclaim *(list on back)* (CRSS) Assess Court Costs
☐ Dismiss (DISM) Assess Court Costs
☐ Exempt/Waive Mediation (EXMD)
☐ Extend Statute Of Limitations, Rule 9 (ESOL)
☐ Extend Time For Complaint (EXCO)
☐ Failure To Join Necessary Party (FJNP)

☐ Failure To State A Claim (FASC)
☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
☐ Improper Venue/Division (IMVN)
☐ Including Attorney's Fees (ATTY)
☐ Intervene (INTR)
☐ Interplead (OTHR)
☐ Lack Of Jurisdiction (Person) (LJPN)
☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
☐ Modification Of Child Support In IV-D Actions (MSUP)
☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
☐ Petition To Sue As Indigent (OTHR)
☐ Rule 12 Motion In Lieu Of Answer (MDLA)
☐ Sanctions (SANC)
☐ Set Aside (OTHR)
☐ Show Cause (SHOW)
☐ Transfer (TRFR)
☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
☐ Vacate/Modify Judgment (VCMD)
☐ Withdraw As Counsel (WDCN)
☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must include either a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

*(Over)*

AOC-CV-751, Rev. 3/19. © 2019 Administrative Office of the Courts

| | CLAIMS FOR RELIEF | |
|---|---|---|

- [ ] Administrative Appeal (ADMA)
- [ ] Appointment Of Receiver (APRC)
- [ ] Attachment/Garnishment (ATTC)
- [ ] Claim And Delivery (CLMD)
- [ ] Collection On Account (ACCT)
- [ ] Condemnation (CNDM)
- [ ] Contract (CNTR)
- [ ] Discovery Scheduling Order (DSCH)
- [ ] Injunction (INJU)

- [ ] Limited Driving Privilege - Out-Of-State Convictions (PLDP)
- [ ] Medical Malpractice (MDML)
- [ ] Minor Settlement (MSTL)
- [ ] Money Owed (MNYO)
- [ ] Negligence - Motor Vehicle (MVNG)
- [x] Negligence - Other (NEGO)
- [ ] Motor Vehicle Lien G.S. Chapter 44A (MVLN)
- [ ] Possession Of Personal Property (POPP)

- [x] Product Liability (PROD)
- [ ] Real Property (RLPR)
- [ ] Specific Performance (SPPR)
- [ ] Other *(specify and list each separately)*

| Date 12/28/2022 | Signature Of Attorney/Party |
|---|---|

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☒ Additional Defendant(s)   ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | The Chemours Company | ☐ Yes  ☐ No |
| | The Chemours Company FC, LLC | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |
| | | ☐ Yes  ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*

| |
|---|
| |
| |

*Defendant(s) Against Whom Crossclaim Asserted*

| |
|---|
| |
| |