IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:23-CV-16-D

| | | |
|---|---|---|
| AQUA NORTH CAROLINA, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| CORTEVA, INC., et al., | ) | |
| | ) | |
| Defendants. | ) | |

On December 28, 2022, Aqua North Carolina, Inc. ("Aqua" or "plaintiff") filed a complaint in New Hanover Superior Court against E.I. Du Pont de Nemours and Company, Inc. ("Du Pont"), the Chemours Company ("Chemours"), the Chemours Company FC, LLC ("Chemours FC"), and Corteva, Inc. ("Corteva") (collectively "defendants") alleging inadequate design or formulation, gross negligence, negligence, private nuisance, public nuisance, trespass to chattels and real property, actual fraudulent transfer, constructive fraudulent transfer, punitive damages, unjust enrichment, and unfair and deceptive trade practices. See [D.E. 1-4] 5–25. On February 2, 2023, defendants removed the case to this court [D.E. 1].

On September 8, 2023, Aqua filed an amended complaint [D.E. 36]. On September 21, 2023, the court notified Aqua of deficiencies and ordered Aqua to move to amend its complaint. On September 28, 2023, Aqua moved to amend its complaint [D.E. 43]. On October 2, 2023, the court granted Aqua's motion to amend [D.E. 45]. On October 6, 2023, Aqua filed an amended complaint [D.E. 47].

On October 30, 2023, defendants moved to dismiss Aqua's amended complaint for failure to state a claim [D.E. 49] and filed a memorandum in support [D.E. 50]. See Fed. R. Civ. P. 12(b)(6). On December 4, 2023, Aqua voluntarily dismissed its actual fraudulent transfer and constructive fraudulent transfer claims [D.E. 52] and responded in opposition to defendants' motion to dismiss [D.E. 53]. On December 18, 2023, defendants replied [D.E. 54]. As explained below, the court grants in part defendants' motion to dismiss and dismisses Aqua's inadequate design, public nuisance, trespass to chattels, punitive damages, and unfair and deceptive trade practices claims.

I.

The Fayetteville Works Facility ("FWF") produces films, fibers, and specialty chemicals. See Am. Compl. [D.E. 47] ¶ 32. Du Pont owned and operated FWF from the early 1970s until 2015, when Du Pont transferred ownership to Chemours, a spin-off. See id. at ¶¶ 3, 14. Chemours currently operates FWF. See id. at ¶ 19. Chemours FC is a subsidiary of Chemours and also operates FWF. See id. at ¶¶ 21–22. Through a series of transactions, Corteva holds certain Du Pont assets and liabilities. See id. at ¶¶ 25–28.

At one time, the 3M Company supplied a bio-persistent, bio-accumulative chemical, Perfluorooctanoic acid ("PFOA" or "C8") to defendants. See id. at ¶ 29. PFOA is a kind of per- or polyfluoroalkyl substance ("PFAS"). The 3M Company "decided to stop making" its own PFAS, so Du Pont "quietly increased its own production of PFOA at [FWF] located on the Cape Fear [R]iver in North Carolina." Id. In 2006, the EPA formed a global stewardship program aimed at eliminating PFOA from emissions and products by 2015. See id. at ¶ 30. In response, Du Pont developed GenX as a substitute for PFOA. See id. Defendants increased GenX production at FWF

2

over the ensuing years and claimed it was "a more sustainable solution" than PFOA. Id. Defendants also claimed GenX had "a favorable toxicological profile and very rapid bioelimination." Id.

Aqua alleges that defendants discharge wastewater from FWF, which allegedly contains polyfluorinated chemicals ("PFCs") like GenX, into the Cape Fear River. See id. at ¶¶ 3, 32. Aqua alleges that FWF "has or had had at least one exhaust stack" that caused airborne emissions of PFCs, which caused "additional water contamination when airborne particles emitted from the stack" and dissolved or leached into groundwater. Id. at ¶ 33.

Defendants have studied the health effects of GenX since approximately 1963. See id. at ¶ 42. Aqua alleges "[s]cientists have linked PFCs to kidney cancer, testicular cancer, prostate cancer, ovarian cancer, non-Hodgkin lymphoma, liver disease, ulcerative colitis, thyroid disease, hypercholesterolemia, and pregnancy-induced hypertension." Id. at ¶ 34; see id. at ¶ 42. Regulators and scientists "acknowledge substantial toxicological concerns and related human health and environmental risks posed by GenX and other PFCs." Id. at ¶ 45. Scientists base these results on animal studies. See id. at ¶¶ 42–43. Scientists have not conducted a "substantive body of human studies." Id. at ¶ 43. Despite the results of the animal studies, defendants "repeatedly failed to recover and capture (destroy) or recycle GenX from its wastewater." Id. at ¶ 44. Instead, defendants "continued to discharge significant quantities of GenX into the [Cape Fear] River, the groundwater, and the air" surrounding FWF. Id.

On February 25, 2019, Chemours and North Carolina signed a consent order that required Chemours to provide certain remedial measures, such as water filtration systems, to affected businesses, households, schools, and public buildings. See id. at ¶¶ 47–50. On June 15, 2022, the Environmental Protection Agency ("EPA") reduced its drinking water Health Advisory Level for GenX from 140 ppt to 10 ppt. See id. at ¶¶ 53–54.

3

Aqua is a water utility provider that serves over 320,000 North Carolinians across the state, including in New Hanover and counties allegedly affected by defendants' wastewater. See id. at ¶ 2. Aqua owns and operates 737 public water systems throughout North Carolina. See id. at ¶ 12. Aqua's water systems "include over 1,500 active production wells and approximately 85,000 water connections." Id. at ¶ 13. Aqua alleges defendants have contaminated some of Aqua's water systems through defendants' discharge of GenX and other PFCs. See id. Aqua alleges that defendants' discharge of GenX and PFCs has forced Aqua "to address the contamination of its water systems . . . to protect its customers' health and well-being and its infrastructure." Id. at ¶ 39. Aqua alleges it has "expended and will continue to expend significant resources to sample, test, investigate, and monitor its water systems for PFC contamination." Id. Aqua also has "incurred, and will continue to incur, significant costs to monitor its water systems" for PFCs and improve its water systems with filtration systems to reduce or remove PFC contamination. Id. at ¶ 40.

II.

A motion to dismiss under Rule 12(b)(6) tests the complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–80 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 554–63 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008). To withstand a Rule 12(b)(6) motion, a pleading "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Iqbal, 556 U.S. at 678 (quotation omitted); see Twombly, 550 U.S. at 570; Giarratano, 521 F.3d at 302. In considering the motion, the court must construe the facts and reasonable inferences "in the light most favorable to [the nonmoving party]." Massey v. Ojaniit, 759 F.3d 343, 352 (4th Cir. 2014) (quotation omitted); see Clatterbuck v. City of Charlottesville, 708 F.3d 549, 557 (4th Cir. 2013), abrogated on other grounds by Reed v. Town of Gilbert, 576 U.S. 155

4

(2015). A court need not accept as true a complaint's legal conclusions, "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 678–79. Rather, a plaintiff's factual allegations must "nudge[ ] [its] claims," Twombly, 550 U.S. at 570, beyond the realm of "mere possibility" into "plausibility." Iqbal, 556 U.S. at 678–79.

"Determining whether a complaint states a plausible claim for relief . . . [is] a context specific task that requires the reviewing court to draw on judicial experience and common sense." Iqbal, 556 U.S. at 679. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the complaint does not suffice. Id.

When evaluating a motion to dismiss, a court considers the pleadings and any materials "attached or incorporated into the complaint." E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc., 637 F.3d 435, 448 (4th Cir. 2011); see Fed. R. Civ. P. 10(c); Goines v. Valley Cmty. Servs. Bd., 822 F.3d 159, 165–66 (4th Cir. 2016); Thompson v. Greene, 427 F.3d 263, 268 (4th Cir. 2005). A court may also consider a document submitted by a moving party if it is "integral to the complaint and there is no dispute about the document's authenticity." Goines, 822 F.3d at 166; Occupy Columbia v. Haley, 738 F.3d 107, 117 n.7 (4th Cir. 2013). Additionally, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201; Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009).

In its amended complaint, Aqua brings claims for inadequate design or formulation, gross negligence, negligence, private nuisance, public nuisance, trespass to chattels and real property, actual fraudulent transfer, constructive fraudulent transfer, punitive damages, and unfair and deceptive trade practices. See Am. Compl. ¶¶ 55–127. These claims arise under state law; therefore,

5

the court applies North Carolina substantive law. Accordingly, this court must predict how the Supreme Court of North Carolina would rule on any disputed state-law issues. See Twin City Fire Ins. Co. v. Ben Arnold-Sunbelt Beverage Co. of S.C., 433 F.3d 365, 369 (4th Cir. 2005). In doing so, the court must look first to opinions of the Supreme Court of North Carolina. See id.; Parkway 1046, LLC v. U.S. Home Corp., 961 F.3d 301, 306 (4th Cir. 2020); Stahle v. CTS Corp., 817 F.3d 96, 100 (4th Cir. 2016). If there are no governing opinions from that court, this court may consider the opinions of the North Carolina Court of Appeals, treatises, and "the practices of other states." Twin City Fire Ins. Co., 433 F.3d at 369 (quotation omitted). In predicting how the highest court of a state would address an issue, this court must "follow the decision of an intermediate state appellate court unless there is persuasive data that the highest court would decide differently." Town of Nags Head v. Toloczko, 728 F.3d 391, 398 (4th Cir. 2013) (quotation omitted); see Hicks v. Feiock, 485 U.S. 624, 630 & n.3 (1988).[1] Moreover, in predicting how the highest court of a state would address an issue, this court "should not create or expand a [s]tate's public policy." Time Warner Ent.-Advance/Newhouse P'ship v. Carteret-Craven Elec. Membership Corp., 506 F.3d 304, 314 (4th Cir. 2007) (alteration and quotation omitted); see Day & Zimmermann, Inc. v. Challoner, 423 U.S. 3, 4 (1975) (per curiam); Wade v. Danek Med., Inc., 182 F.3d 281, 286 (4th Cir. 1999).

A.

Aqua's first claim is for inadequate design or formulation under the North Carolina Products Liability Act, N.C. Gen. Stat. § 99B-6. See Am. Compl. ¶¶ 55–62. The North Carolina Products Liability Act is not a source of liability. See Crews v. W.A. Brown & Son, Inc., 106 N.C. App. 324, 329, 416 S.E.2d 924, 928 (1992). Rather, a products liability plaintiff must seek recovery under

---

[1] North Carolina does not have a mechanism to certify questions of state law to its Supreme Court. See Toloczko, 728 F.3d at 397–98.

6

negligence, breach of warranty, or contract theories. See Sparks v. Oxy-Health, LLC, 134 F. Supp. 3d 961, 986 (E.D.N.C. 2015); Red Hill Hosiery Mill, Inc. v. MagneTek, Inc., 138 N.C. App. 70, 74–75, 530 S.E.2d 321, 325–26 (2000); Crews, 106 N.C. App. at 329, 416 S.E.2d at 928. When "a product liability claim sounds in tort, . . . the plaintiff must prove duty, breach, causation, and damages." Sparks, 134 F. Supp. 3d at 986; see Bryant v. Adams, 116 N.C. App. 448, 465, 448 S.E.2d 832, 841 (1994). To state a claim, a plaintiff must plausibly allege "(1) the product was defective at the time it left the control of the defendant, (2) the defect was the result of defendant's negligence, and (3) the defect proximately caused plaintiff damage." Sparks, 134 F. Supp. 3d at 986 (quotation omitted); see Red Hill Hosiery Mill, Inc., 138 N.C. App. at 75, 530 S.E.2d at 326. As for the second element, a plaintiff must plausibly allege either: (1) when "the product left control of the manufacturer, the manufacturer unreasonably failed to adopt a safer, practical, feasible, and otherwise reasonable alternative design or formulation," or (2) when "the product left the control of the manufacturer, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume a product of this design." N.C. Gen. Stat. § 99B-6(a)(1)–(2); see DeWitt v. Eveready Battery Co., 144 N.C. App. 143, 154–55, 550 S.E.2d 511, 518–19 (2001), aff'd, 355 N.C. 672, 565 S.E.2d 140 (2002).

"Alleging negligent design requires alleging what was wrong with the design." Asby v. Medtronic, Inc., 673 F. Supp. 3d 787, 793 (E.D.N.C. 2023) (quotation omitted); see Presnell v. Snap-On Securecorp., Inc., No. 1:20CV234, 2021 WL 1227062, at *3 (M.D.N.C. Mar. 31, 2021) (unpublished); Markel Am. Ins. Co. v. XDS, LLC, No. 7:20-CV-75, 2020 WL 4938435, at *4 n.5 (E.D.N.C. Aug. 24, 2020) (unpublished); Fields v. Jobar Int'l, Inc., No. 3:14-CV-50, 2014 WL 1513289, at *3 (E.D. Va. Apr. 16, 2014) (unpublished). Aqua does not plausibly allege any facts concerning the design or formulation of GenX. Cf. Am. Compl. ¶¶ 57, 59 (conclusorily alleging that

7

defendants "acted unreasonably in designing or formulating the product," that "at the time the product left control of the manufacturer and was let loose into the environment, the design or formulation of the product was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume it," and that at all times, defendants "could make products that did not contain PFCs"). Instead, Aqua's plausible factual allegations concern defendants' alleged failure to properly dispose of GenX. See, e.g., Am. Compl. ¶¶ 42–44. Accordingly, the court grants defendants' motion to dismiss Aqua's first claim. See, e.g., Asby, 673 F. Supp. 3d at 793–94.

B.

Aqua's second claim is for gross negligence. See Am. Compl. ¶¶ 63–71. "[T]he difference between ordinary negligence and gross negligence is substantial." Yancey v. Lea, 354 N.C. 48, 53, 550 S.E.2d 155, 158 (2001), superseded by rule on other grounds. "An act or conduct rises to the level of gross negligence when the act is done purposely and with the knowledge that such act is a breach of duty to others, i.e., a conscious disregard of the safety of others." Id., 550 S.E.2d at 158 (emphasis omitted); see Ray v. N.C. Dep't of Transp., 366 N.C. 1, 13, 727 S.E.2d 675, 684 (2012); Green ex rel. Crudup v. Kearney, 217 N.C. App. 65, 70–71, 719 S.E.2d 137, 141 (2011). "Gross negligence is determined based on the facts and circumstances of each case . . . ." Ray, 366 N.C. at 13, 727 S.E.2d at 684. "Two factors are especially relevant: purposeful conduct and disregard for the safety of others." Nix v. Chemours Co. FC, LLC, 456 F. Supp. 3d 748, 760 (E.D.N.C. 2019); see Ray, 366 N.C. at 13, 727 S.E.2d at 684; Yancey, 354 N.C. at 53, 550 S.E.2d at 158.

Aqua plausibly alleges defendants were negligent. See Am. Compl. ¶¶ 72–73. Aqua also plausibly alleges defendants purposefully discharged chemicals in disregard for the safety of others. See id. at ¶¶ 31, 42–44. Accordingly, the court denies defendants' motion to dismiss Aqua's second claim. See, e.g., Nix, 456 F. Supp. 3d at 760.

8

C.

Aqua's third claim is for negligence. See Am. Compl. ¶¶ 72–73. Under North Carolina law, "[n]egligence is the failure to exercise proper care in the performance of a legal duty which the defendant owed the plaintiff under the circumstances surrounding them." Dunning v. Forsyth Warehouse Co., 272 N.C. 723, 725, 158 S.E.2d 893, 895 (1968); see Moore v. Moore, 268 N.C. 110, 112, 150 S.E.2d 75, 77 (1966); Coulter v. Catawba Cnty. Bd. of Educ., 189 N.C. App. 183, 185, 657 S.E.2d 428, 430 (2008). To state an actionable claim, a plaintiff must plausibly allege that "(1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligent breach of such duty was the proximate cause of the injury." Whisnant v. Carolina Farm Credit, 204 N.C. App. 84, 93–94, 693 S.E.2d 149, 156 (2010) (quotation omitted); see Ward v. Carmona, 368 N.C. 35, 37, 770 S.E.2d 70, 72 (2015); Bridges v. Parrish, 366 N.C. 539, 541, 742 S.E.2d 794, 796 (2013); Fussell v. N.C. Farm Bureau Mut. Ins. Co., 364 N.C. 222, 226, 695 S.E.2d 437, 440 (2010).

As for duty, defendants owed Aqua a duty to exercise ordinary care. See Fussell, 364 N.C. at 226, 695 S.E.2d at 440. "The duty of ordinary care is no more than a duty to act reasonably." Id., 695 S.E.2d at 440. Aqua plausibly alleges that defendants failed to act reasonably in operating FWF by discharging chemicals into the Cape Fear River even after learning of potential adverse health consequences associated with the chemicals. See, e.g., Am. Compl. ¶¶ 42–44. As for proximate causation, defendants may be held liable only for injuries "that were reasonably foreseeable and avoidable through the exercise of due care." Fussell, 364 N.C. at 226, 695 S.E.2d at 440. Aqua plausibly alleges that defendants could reasonably foresee that discharging chemicals from FWF would harm Aqua's property. See Am. Compl. ¶ 31; see, e.g., Nix, 456 F. Supp. 3d at 759.

9

Defendants contend Aqua fails to plausibly allege damages. See [D.E. 50] 5–7. Aqua, however, plausibly alleges damage to its property. See Am. Compl. ¶¶ 13, 38–40; see, e.g., Cape Fear Pub. Util. Auth. v. Chemours Co., Nos. 7:17-CV-195, 7:17-CV-209, 2019 WL 13300188, at *4, *9 (E.D.N.C. Apr. 19, 2019) (unpublished). Accordingly, the court denies defendants' motion to dismiss Aqua's third claim.

D.

Aqua's fourth claim is for private nuisance. See Am. Compl. ¶¶ 74–78. Under North Carolina law, plaintiffs seeking to recover for a private nuisance must show a substantial and unreasonable interference with the use and enjoyment of their property. See Kent v. Humphries, 303 N.C. 675, 677, 281 S.E.2d 43, 45 (1981); Morgan v. High Penn Oil Co., 238 N.C. 185, 193–94, 77 S.E.2d 682, 689 (1953); Barrier v. Troutman, 231 N.C. 47, 49–50, 55 S.E.2d 923, 925 (1949); BSK Enters., Inc. v. Beroth Oil Co., 246 N.C. App. 1, 24–25, 783 S.E.2d 236, 252 (2016); Shadow Grp., LLC v. Heather Hills Home Owners Ass'n, 156 N.C. App. 197, 200, 579 S.E.2d 285, 287 (2003); Jordan v. Foust Oil Co., 116 N.C. App. 155, 167, 447 S.E.2d 491, 498 (1994); Grant v. E.I. du Pont de Nemours & Co., No. 4:91-CV-55, 1995 WL 18239435, at *5 (E.D.N.C. July 14, 1995) (unpublished). An interference is substantial when it results in significant annoyance, some material physical discomfort, or injury to plaintiffs' health or property. See Watts v. Pama Mfg. Co., 256 N.C. 611, 617, 124 S.E.2d 809, 813–14 (1962); Pake v. Morris, 230 N.C. 424, 426, 53 S.E.2d 300, 301 (1949); Duffy v. E.H. & J.A. Meadows Co., 131 N.C. 31, 34, 42 S.E. 460, 461 (1902); Shadow Grp., LLC, 156 N.C. App. at 200, 579 S.E.2d at 287. A court judges reasonableness with an objective standard and balances the relative benefit of defendants' conduct and harm to plaintiffs. See Pendergrast v. Aiken, 293 N.C. 201, 217, 236 S.E.2d 787, 797 (1977) (listing factors); Watts,

10

256 N.C. at 618, 124 S.E.2d at 814 (same); Rainey v. St. Lawrence Homes, Inc., 174 N.C. App. 611, 613–14, 621 S.E.2d 217, 220 (2005).

Aqua plausibly alleges interference with its use and enjoyment of its property by defendants' discharge of GenX. See Am. Compl. ¶¶ 13, 38–40. Defendants contend Aqua "cannot establish nuisance based solely on the alleged presence" of some amount of GenX on Aqua's property. [D.E. 50] 7–8. Aqua, however, plausibly alleges the interference was "objectively unreasonable, even though a maximum contaminant level . . . has not been established for GenX." Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *6. Accordingly, the court denies defendants' motion to dismiss Aqua's fourth claim.

E.

Aqua's fifth claim is for public nuisance. See Am. Compl. ¶¶ 82–85. "A public nuisance exists wherever acts or conditions are subversive of public order, decency, or morals, or constitute an obstruction of public rights." State v. Everhardt, 203 N.C. 610, 617, 166 S.E. 738, 741–42 (1932) (quotation omitted); see Twitty v. State, 85 N.C. App. 42, 49, 354 S.E.2d 296, 301 (1987). "A public nuisance affects the local community generally and its maintenance constitutes an offense against the State." Twitty, 85 N.C. App. at 49, 354 S.E.2d at 301. "Whatever tends to endanger life, or generate disease, and affect the health of the community . . . is generally, at common law, a public nuisance." Everhardt, 203 N.C. at 618, 166 S.E. at 742.

Under North Carolina law, a private plaintiff has standing to bring a public nuisance claim "as long as the party has suffered an injury that cannot be considered merged in the general public right." Neuse River Found., Inc. v. Smithfield Foods, Inc., 155 N.C. App. 110, 115, 574 S.E.2d 48, 52 (2002), abrogated on other grounds by Comm. to Elect Dan Forest v. Emps. Pol. Action Comm., 376 N.C. 558, 853 S.E.2d 698 (2021); see Priselac v. Chemours Co., No. 7:20-CV-190, 2022 WL

11

909406, at *5 (E.D.N.C. Mar. 28, 2022) (unpublished); Barrier, 231 N.C. at 49, 55 S.E.2d at 925; Hampton v. N.C. Pulp Co., 223 N.C. 535, 543–44, 27 S.E.2d 538, 544 (1943). To state a public nuisance claim as a private party, a plaintiff must allege "(1) injury to a protected interest that cannot be considered merged in the general public right; (2) causation; and (3) proper, or individualized, forms of relief." Neuse River Found., Inc., 155 N.C. App. at 116, 574 S.E.2d at 53.

In Cape Fear Public Utility Authority, the plaintiffs (public water suppliers and governmental entities) alleged that the defendants (the same as in this case) contaminated plaintiffs' property and public water supply by discharging GenX into the Cape Fear River. See Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *4. The court held that the plaintiffs failed to "plausibly allege special and unique damage caused by defendants' alleged interference with plaintiffs' property." Id. at *5; see Barrier, 231 N.C. at 50, 55 S.E.2d at 925 (collecting cases); Hampton, 223 N.C. at 544–48, 27 S.E.2d at 544–47; Neuse River Found., Inc., 155 N.C. App. at 116, 574 S.E.2d at 53. Aqua does not allege anything materially different from the plaintiffs in Cape Fear. See, e.g., Am. Compl. ¶ 13. Accordingly, the court grants defendants' motion to dismiss Aqua's fifth claim. See, e.g., Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *5.

F.

Aqua's sixth claim is for trespass to chattels and real property. See Am. Compl. ¶¶ 86–91. Under North Carolina law, trespass is "a wrongful invasion of the possession of another." Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627, 588 S.E.2d 871, 874 (2003) (quotation omitted); see State ex rel. Bruton v. Flying 'W' Enters., Inc., 273 N.C. 399, 415, 160 S.E.2d 482, 493 (1968); Elec. World, Inc. v. Barefoot, 153 N.C. App. 387, 393, 570 S.E.2d 225, 230 (2002); cf. Matthews v. Forrest, 235 N.C. 281, 283, 69 S.E.2d 553, 555 (1952) ("The essence of a trespass to [real property] is the disturbance of possession."). A claim of trespass to real property requires "(1)

12

possession of the property by plaintiff when the alleged trespass was committed; (2) an unauthorized entry by defendant; and (3) damage to plaintiff." Singleton, 357 N.C. at 627, 588 S.E.2d at 874 (quotation omitted); see Fordham v. Eason, 351 N.C. 151, 153, 521 S.E.2d 701, 703 (1999); Elec. World, Inc., 153 N.C. App. at 393, 570 S.E.2d at 230; Jordan, 116 N.C. App. at 166, 447 S.E.2d at 498. Because "every unauthorized entry on land in the peaceable possession of another constitutes a trespass, without regard to the degree of force used and irrespective of whether actual damage is done," a complaint "states a cause of action for the recovery of nominal damages for a properly pleaded trespass to [real property] even if it contains no allegations setting forth the character and amount of damages." Matthews, 235 N.C. at 283, 69 S.E.2d at 555; see Keziah v. Seaboard Air Line R.R., 272 N.C. 299, 311, 158 S.E.2d 539, 548 (1968); Hutton & Bourbonnais v. Cook, 173 N.C. 496, 499, 92 S.E. 355, 356 (1917); Hawkins v. Hawkins, 101 N.C. App. 529, 533, 400 S.E.2d 472, 475 (1991) (noting that trespass to real property is among the torts that "do not include actual damage as an essential element"), aff'd, 331 N.C. 743, 417 S.E.2d 447 (1992).

Aqua plausibly alleges it possessed real property. See Am. Compl. ¶ 12 ("[Aqua] owns and operates 737 public water systems in North Carolina."). Aqua plausibly alleges defendants, by knowingly discharging GenX, have intentionally and unauthorizedly entered Aqua's property. See id. at ¶¶ 13, 31. Aqua plausibly alleges at least nominal damages. See id. at ¶¶ 38–40. Accordingly, the court denies defendants' motion to dismiss Aqua's trespass to real property claim. See, e.g., Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *6.

As for Aqua's trespass to chattels claim, under North Carolina law, a claim of trespass to chattels requires that the plaintiff show (1) actual or constructive possession of the personal property or chattel at the time of the trespass and (2) an unlawful, unauthorized interference or dispossession of the property by the defendant. See Fordham, 351 N.C. at 155, 521 S.E.2d at 704; Steele v.

13

Bowden, 238 N.C. App. 566, 575, 768 S.E.2d 47, 55 (2014); Kirschbaum v. McLaurin Parking Co., 188 N.C. App. 782, 786–87, 656 S.E.2d 683, 686 (2008). A fixture is property that, "though originally a movable chattel," is "regarded as part of the land." Little ex rel. Davis v. Nat'l Servs. Indus., Inc., 79 N.C. App. 688, 692, 340 S.E.2d 510, 513 (1986) (quotation omitted). "As a general rule, whatever is attached to the land is understood to be part of the realty." Lee-Moore Oil Co. v. Cleary, 295 N.C. 417, 419–20, 245 S.E.2d 720, 722 (1978) (quotation omitted); see Wilson v. McLeod Oil Co., 327 N.C. 491, 515, 398 S.E.2d 586, 598 (1990). "The test for determining whether a chattel which has been annexed to land has become real property or remains personal property is the intention with which the annexation was made." Hughes v. Young, 115 N.C. App. 325, 328, 444 S.E.2d 248, 250 (1994); see Brown v. N.C. Joint Stock Land Bank of Durham, 213 N.C. 594, 598, 197 S.E. 140, 142 (1938).

Aqua has identified as chattels water and water systems. See [D.E. 53] 20. "Water systems are properly characterized as real property, not personal property." Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *7; see Lyon v. Ward, 28 N.C. App. 446, 448, 221 S.E.2d 727, 728 (1976); cf. Baker Constr. Co. v. City of Burlington, 200 N.C. App. 435, 683 S.E.2d 790, 2009 WL 3350747, at *5, *7 (2009) (unpublished table decision). As for characterizing water as a chattel, the court cannot expand North Carolina public policy to encompass such a claim. Cf. Time Warner, 506 F.3d at 314. Accordingly, the court grants defendants' motion to dismiss Aqua's trespass to chattels claim. See, e.g., Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *7.

G.

Aqua's ninth claim is for punitive damages. See Am. Compl. ¶¶ 114–19. A "claim for punitive damages is not a stand-alone claim." Funderburk v. JPMorgan Chase Bank, N.A., 241 N.C. App. 415, 425, 775 S.E.2d 1, 8 (2015); see Sykes v. Health Network Sols., Inc., 372 N.C. 326, 329,

14

828 S.E.2d 467, 469 (2019); Bryant v. Wake Forest Univ. Baptist Med. Ctr., 281 N.C. App. 630, 645, 870 S.E.2d 269, 279 (2022), disc. review denied, 876 S.E.2d 279 (N.C. 2022); Iadanza v. Harper, 169 N.C. App. 776, 783, 611 S.E.2d 217, 223 (2005). Aqua brought this claim to "preserve and assert this damages theory." [D.E. 53] 24. Aqua concedes that dismissing its claim for "punitive damages as a standalone cause of action is immaterial to its applicability in this case." Id. Accordingly, the court dismisses count nine. See, e.g., Cape Fear Pub. Util. Auth., 2019 WL 13300188, at *10.

H.

Aqua's tenth claim is for unfair and deceptive trade practices. See Am. Compl. ¶¶ 120–27. To state an actionable unfair or deceptive trade practice claim, a plaintiff must plausibly allege: (1) an unfair or deceptive act or practice, (2) in or affecting commerce, and (3) which proximately caused injury to the plaintiff. See Barbour v. Fid. Life Ass'n, 361 F. Supp. 3d 565, 573 (E.D.N.C. 2019); Kelly v. Ga.-Pac., LLC, 671 F. Supp. 2d 785, 798 (E.D.N.C. 2009); SciGrip, Inc. v. Osae, 373 N.C. 409, 426, 838 S.E.2d 334, 347 (2020); Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 71–72, 653 S.E.2d 393, 399 (2007). "[W]hether an act or practice is an unfair or deceptive practice . . . is a question of law for the court." Gray v. N.C. Ins. Underwriting Ass'n, 352 N.C. 61, 68, 529 S.E.2d 676, 681 (2000); see ABT Bldg. Prods. Corp. v. Nat'l Union Fire Ins. Co. of Pittsburgh, 472 F.3d 99, 123 (4th Cir. 2006). "[A] practice is deceptive if it has the tendency to deceive. . . . [A] practice is unfair when it offends established public policy as well as when the practice is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers." Gray, 352 N.C. at 68, 529 S.E.2d at 681 (quotation omitted); see Marshall v. Miller, 302 N.C. 539, 548, 276 S.E.2d 397, 403 (1981).

15

To plausibly allege a claim under North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), the plaintiff must be in a "business relationship" with or be a "customer[] of" the defendant. Town of Belhaven v. Pantego Creek, LLC, 250 N.C. App. 459, 473, 793 S.E.2d 711, 720 (2016); see Washington v. Trinity Indus., Inc., No. 1:15CV517, 2016 WL 4544048, at *4–6 (M.D.N.C. Aug. 31, 2016) (unpublished) (holding that only plaintiffs who "participate in an exchange of value" with a defendant have standing to bring a claim and collecting cases for the same); see, e.g., Walker v. Fleetwood Homes of N.C., Inc., 362 N.C. 63, 68, 653 S.E.2d 393, 397 (2007) (allowing a plaintiff "who selected the interior details for the home, who planned to live in the home, and who was going to make the monthly installment payments" to assert a UDTPA claim against a mobile home supplier).

Aqua does not plausibly allege it was in any business relationship with defendants. Accordingly, Aqua cannot bring a UDTPA claim against defendants. See, e.g., Washington, 2016 WL 4544048, at *4–6. Thus, the court dismisses Aqua's UDTPA claim.

Alternatively, in its complaint, Aqua relies on defendants' "recurrent violations of environmental regulations and . . . actions to poison the [Cape Fear] River." Am. Compl. ¶ 124. Aqua alleges the existence of various public health regulatory goals and a consent order that concern GenX and other PFCs in water. See, e.g., id. at ¶¶ 50–54. Aqua, however, does not plausibly allege defendants actually violated some "established public policy" of North Carolina. For example, Aqua does not allege that defendants' discharge of GenX actually exceeds the alleged targets. Cf. id. Moreover, Aqua does not allege that defendants' alleged "recurrent violations of environmental regulations" were deceptive. Id. at ¶ 124. Accordingly, Aqua fails to state a UDTPA claim. See, e.g., Draughon v. Smith, No. 7:21-CV-101, 2021 WL 4927981, at *8–9 (E.D.N.C. Oct. 21, 2021) (unpublished).

16

In its response to defendants' motion to dismiss, Aqua also relies on "Defendants' lies and misleading" statements to government regulators to support its UDTPA claim. [D.E. 53] 23. To state a claim based on alleged misrepresentations, a plaintiff must plausibly allege "reliance on the misrepresentation in order to show the necessary proximate cause." Bumpers v. Cmty. Bank of N. Va., 367 N.C. 81, 88–89, 747 S.E.2d 220, 226 (2013); see Johnson v. Lendlease (US) Pub. P'ships LLC, No. 7:21-CV-188, 2022 WL 2447091, at *15 (E.D.N.C. July 5, 2022) (unpublished); Sasso v. Tesla, Inc., 584 F. Supp. 3d 60, 79 (E.D.N.C. 2022), aff'd sub nom. Challenge Printing Co. of the Carolinas, Inc. v. Tesla, Inc., No. 22-2057, 2024 WL 2795180 (4th Cir. May 31, 2024) (per curiam) (unpublished). "Reliance, in turn, demands evidence showing that the plaintiff suffered actual injury as a proximate result of defendant's deceptive statement or misrepresentation." Bumpers, 367 N.C. at 89, 747 S.E.2d at 227 (cleaned up); see Rahamankhan Tobacco Enters. Pvt. Ltd. v. Evans MacTavish Agricraft, Inc., 989 F. Supp. 2d 471, 478 (E.D.N.C. 2013).

The heightened pleading standard under Federal Rule of Civil Procedure 9(b) "applies to unfair and deceptive trade practices claims based on alleged misrepresentations." Sasso, 584 F. Supp. 3d at 80; see, e.g., Cross v. Ciox Health, LLC, 438 F. Supp. 3d 572, 584–86 (E.D.N.C. 2020); Topshelf Mgmt., Inc. v. Campbell-Ewald Co., 117 F. Supp. 3d 722, 728–32 (M.D.N.C. 2015). Rule 9(b) provides that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he circumstances required to be pled with particularity under Rule 9(b) are the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." Harrison v. Westinghouse Savannah River Co., 176 F.3d 776, 784 (4th Cir. 1999) (quotations omitted); see Edmonson v. Eagle Nat'l Bank, 922 F.3d 535, 553 (4th Cir. 2019).

17

Aqua alleges defendants "misled and lied to government regulators, claiming that they were disposing of PFCs at a secure off-site facility or properly incinerating them." Am. Compl. ¶ 5. Aqua alleges defendants claimed GenX was "a more sustainable solution" that had "a favorable toxicological profile and very rapid bioelimination, combined with unique environmental exposure control technologies that reduce the potential for environmental release and exposure." Id. at ¶ 30 (quotation omitted). Except for one linked brochure, Aqua's generalized allegations that defendants "misled and lied" to others do not suffice to state a plausible claim under Rule 9. See id. at ¶ 30 & n.2 (the brochure). Aqua does not otherwise allege specific times, places, or contents of false representations defendants made. Moreover, Aqua "does not plausibly allege that defendants made any direct statements to [Aqua] constituting an actual misrepresentation or omission." Blackman v. Boston Whaler, Inc., 649 F. Supp. 3d 142, 156 (E.D.N.C. 2023). Accordingly, the court grants defendants' motion to dismiss Aqua's UDTPA claim. See id. at 156–57.

III.

In sum, the court GRANTS IN PART defendants' motion to dismiss [D.E. 49] and DISMISSES WITHOUT PREJUDICE plaintiff's inadequate design, public nuisance, trespass to chattels, punitive damages, and unfair and deceptive trade practices claims.

SO ORDERED. This 9 day of July, 2024.

JAMES C. DEVER III
United States District Judge